**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 04-248-DLB**

**TERRY CRAIG**                                                                                  **PLAINTIFF**

**VS.**                                            **OPINION & ORDER**

**CONTINENTAL PET TECHNOLOGIES, INC.**                                    **DEFENDANT**


********************

## I.      INTRODUCTION

Plaintiff Terry Craig alleges employment discrimination on the basis of gender and age, as well as disability discrimination under K.R.S. § 344.010 et seq.  This matter is before the Court on Defendant's Motion for Summary Judgment.  (Doc. # 31)  Plaintiff having filed her Response (Doc. # 34), and Defendant having filed a Reply (Doc. #35), the motion is ripe for the Court's review.  For the reasons that follow, Defendant's motion is **granted**.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Employment History

Terry Craig was 57 years old when she filed her amended complaint.  The claims brought by Craig arise from her former employment at Continental Pet Technologies, Inc. ("Continental") in Florence, Kentucky.  Continental is a manufacturer of plastic bottles. Craig began working at Continental in 1998 in the quality control department where her duties included inspection of the bottles for any flaws.  Craig occasionally worked in Continental's laboratory testing the bottles to ensure they met the customer's

specifications.

In May of 2000, Craig submitted Family and Medical Leave (FMLA) paperwork indicating that she had been diagnosed with fibroid tumors. Soon thereafter Craig submitted additional FMLA paperwork explaining that she had back problems. As a result of these conditions, Craig's doctor certified that she could only work 48 hours per week and could not lift anything over fifteen pounds. According to Craig, these two medical conditions form the basis for her disability claim.

During her deposition, Craig stated that her fibroid tumors did not prevent her from doing her job at work. More specifically, Craig testified that she could do any job in the plant with the exception of the box-maker 2 job. Craig further indicated that with the exception of carrying excessive amounts of weights and running up a flight of stairs, her medical conditions did not cause her any trouble in her daily activities of dusting, cleaning, washing dishes, vacuuming, driving, or dressing herself.

In October of 2002, Craig was laid off for ten weeks. When she returned in December of 2002, there were no quality control positions available. As a result, Craig was assigned to be an Operator II[1] at the same rate of pay. More specifically, Craig was required to operate a bulk palletizer, a machine at the end of the production line which arranges finished bottles onto pallets. The Operator II position consisted of three distinct tasks, each of which was generally performed by one person: operation of a bulk palletizer, case packer (1 & 2), and box-maker (1 & 2). During her prior tenure as a member of the quality control department, Craig admits that she did operate some of the machines that

_____

[1] The job tasks and responsibilities for an Operator II have been made part of the record as Exhibit 5 to Defendant's motion for summary judgment. (*See* Doc. # 30, Exhibit 5)

fell within the description of work for the Operator II.

The job of box-maker 2 is very physically demanding. Craig described the work as not only extremely taxing, but also something that a woman should not have to do, stating:

> You have these big skids of corrugate. You pull them over to the box maker, and you take the corrugate, and myself being short, I would have to walk up steps to get this corrugate in the machine. Then you go over and you get more corrugate for the inserter, and you load that up in the machine.
>
> The machine, you make sure the glue buckets are full. It goes through the machine, and sometimes they get jammed up in there. I've seen big men that couldn't get them unjammed. I mean it's like constantly bending, picking up, you know. It's a tough job.
>
> It is a very, very hard job, and it's a, supervisors will tell you it's the hardest job in the place. It's not a job for a woman, any woman. I don't care who it is, but like I said, I'm sure there are women that can run it, but I don't see many 58-year-old women my age and my size doing it.

(Craig deposition at 46). Although the job of box-maker 2 was physically demanding, it was an indispensable part of Continental's operations because assembled boxes from the box maker traveled by conveyor to where the finished bottles exited other machines, where the empty bottles were inserted into the boxes for shipment. Without the boxes, Continental's production line would shut down.

Craig was assigned as an Operator II for approximately four months, until April, 2003, at which time she returned to a position in quality control. As an Operator II, Craig spent most of her time operating a palletizer. Although Craig was reassigned to quality control, she continued to operate the palletizer from time to time as the need arose.

## B.   Continental's Reduction in Force

Throughout Craig's employment at Continental, the company was forced to reduce its work force. According to Continental, these reductions were due to decreased business

which required them to become more efficient with the employees they retained. For instance, when Craig started at Continental in 1998, there were 44 employees working in quality control. By the time she was terminated in October 2003, that number had been reduced to 16. Although quality control saw the greatest reductions in force, other departments were also downsized, including the employees assigned as an Operator II. While Continental employed approximately 10 Operator IIs per shift in 2000, that number had been cut by almost one-half by October 2003.

Continental used a seniority system for retention throughout its workforce reductions, a point conceded by Craig. When the October, 2003 layoffs occurred, Craig no longer had sufficient seniority to retain her non-physical job in quality control, but was permitted to be considered for an Operator II position. After the October, 2003 layoffs, because there were so few Operator II employees on each shift, Continental decided that all remaining Operator II employees would have to be cross-trained so that they were able to rotate to any of the three Operator II jobs (palletizer, case packer and box-maker). As part of the reduction in staffing, Continental expected its Operator IIs to be able to perform all three of the jobs. By requiring that all remaining Operator II personnel be able to operate all three machines, Continental would be able to run the maximum number of production lines, especially if some Operator II employees were absent.

On October 28, 2003, Continental had a staff meeting to explain the rule change to require all Operator II employees to be able to operate all three machines. During that meeting, Craig told management that she was not willing to be trained on the box-maker

4

2, stating that she could not operate the box-maker 2 due to her medical restrictions.[2] Craig was laid off and eventually terminated because she was unwilling or unable to operate the box-maker 2.

It is undisputed that only employees who were trained and able to operate the box-maker 2 were continued in employment as an Operator II.  Although some Continental employees who had been laid off at the same time as Craig and Smith were later recalled, no employee was recalled as an Operator II unless they were trained and able to operate each of the three machines.  As a result, some employees with less seniority than Craig were recalled, but those employees could operate all three Operator II machines, whereas Craig could not.

### C.      Plaintiff's Purported "Direct Evidence" of Discrimination

As evidence of Continental's alleged discriminatory employment practices, Craig points to the deposition testimony of Dale Wade, a Continental maintenance man, who testified regarding statements made to him by Continental production supervisor Danny Townsend.  Wade was permanently laid off at least eight or nine months prior to Craig's termination.  According to Wade, in reaction to his comment that Townsend was pushing the women too hard on the box-cutter, Townsend allegedly replied, "Good, I want them to quit.  Women don't need to be running these machines anyhow."  Further, in discussing layoffs with Wade, Townsend alleged stated that, "when we have layoffs again, the ones that are on restrictions aren't coming back, they're not going to be called back, they're going to stay off on restrictions."

---

[2] One other Continental employee, Sandy Smith, indicated that she, too, was not able to operate the box-maker 2.  Smith was also laid off in October, 2003.

Although Townsend was a Continental supervisor, he was merely a line supervisor, the lowest level supervisor in the Continental Plant.  As a result, Townsend had no role in the initiation of the Operator II cross-training program or any decision concerning the termination of Craig's employment.

In her amended complaint, Craig asserts claims for federal gender and age discrimination under Title VII and the ADEA, and disability discrimination under K.R.S. 344.040 *et seq.*  More particularly, Craig alleges that Continental's explanation for instituting its cross training requirement was pretextual.  Craig asserts that the cross training requirement was deliberately instituted to get rid of older, less physically capable women such as herself.

In its motion for summary judgment, Continental asserts that Craig to unable to state a *prima facie* case of discrimination under any theory because she was not qualified to perform the job requirements of the Operator II position.  More particularly, Craig's failure to cross train on all three machines rendered her unqualified to perform as an Operator II.  Alternatively, Continental argues that even if Craig was able to establish a *prima facie* case, it is entitled to summary judgment because it had a legitimate business justification for its cross training requirement, and that requirement was not pretextual.

### III.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

6

Once the moving party has met its burden of production, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B.   Title VII, the ADEA, and the Kentucky Civil Rights Act.

Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits discrimination "against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. Under the Kentucky Civil Rights Act, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, … because the person is a qualified individual with a disability." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998), K.R.S. § 344.040(1).

### C.   Craig's Title VII Gender Discrimination Claim

It is well-settled that in Title VII actions, "a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (internal citation omitted) In discussing the requirements to prove

7

a *prima facie* case via indirect proof, the *DiCarlo* court stated:

> When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer.  In evaluating a claim of employment discrimination, we employ the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802 (1973), *see also Vaughn v. Watkins Motor Lines, Inc.,* 291 F.3d 900, 906 (6th Cir. 2002);  *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252- 53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  A plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him.  *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.  The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' "  *Id.* at 253, 101 S.Ct. 1089 (quoting *McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817).  Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.*  Throughout this shifting burdens framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."   *Id.; see also Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995).

*Id.* at 414-15.

When seeking to prove a discrimination claim via direct evidence, the *Dicarlo* court

summarized the proof requirements as follows:

> A plaintiff does not have to proceed under the *McDonnell Douglas* burden-shifting framework that applies to circumstantial evidence cases. *Christopher v. Stouder Mem'l Hosp.,* 936 F.2d 870, 879 (6th Cir. 1991).   "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003).  "[T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [gender or age], but also that the employer acted on that predisposition." *Hein v. All America Plywood Co.,* 232 F.3d 482, 488

8

(6th Cir. 2000). Finally, "an employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 382 (6th Cir. 2002).

With this framework in mind, the Court addresses Craig's discrimination claims.

Craig argues that Continental forced her out of her job as an Operator II due to her gender and age. In support of gender discrimination claim, Craig asserts that she has direct evidence of Continental's discriminatory animus through Mr. Wade's testimony concerning Townsend's comments. However, because it is undisputed that Mr. Townsend did not have any decision making authority over Craig's employment at Continental, his comments cannot serve as direct evidence of discrimination. *See Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (holding that comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination); *Johnson v. Kroger Co.,* 319 F.3d 858, 868 (6th Cir. 2003) (remarks made by an individual who has no authority over the challenged employment action are not indicative of discriminatory intent); *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (same)

Even if the Court were to assume Mr. Wade's statements would be admissible as non-hearsay, it is undisputed that Mr. Townsend is not a party who had any authority or control over either Craig's position at Continental or the decision to require cross training for the Operator II position. Thus, Townsend's statements are more appropriately characterized as those of a co-worker which cannot establish a prima facie case of discrimination through direct evidence. *See Carter, Johnson, Hopson, supra*. Moreover,

9

because the alleged comments were made 8-9 months before the adverse employment action, Townsend's comments are not probative of disparate treatment. *See Jacklyn,* 176 F.3d at 928. Therefore, Craig has failed to state a disparate treatment claim via direct evidence.

In the alternative, Craig contends that she has established a direct evidence case because of the disparate impact that the cross-training program had on women at Continental. The Supreme Court has established a three part burden-shifting test to determine if a certain practice has an unlawful disparate impact. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975). First, the plaintiff must establish a prima facie case of discrimination; that there is a presence of an adverse impact by the practices of the defendant. *Id.* Second, if the first prong is successful, the burden then shifts to the defendant to prove that the practice in question has "a manifest relationship to the employment." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971). Finally, if the employer succeeds in the second prong, the plaintiff must show that other practices would serve the employer's interest without creating the disparate impact. *Albemarle*, 422 U.S. at 425.

"A prima face case is established when: (1) plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group." *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005). In *Isabel* the Sixth Circuit concluded that "a plaintiff may rely solely on statistical evidenced to establish a prima facie case of disparate impact" and that the Supreme Court "did not say what kind of statistical evidence should be relied on." *Id.* at 412 (citation omitted) Although there is no established set of rules as

10

to what type of statistics plaintiffs may use to establish disparate impact, Craig has failed to provide any statistical evidence sufficient to create a *prima facie* case.  In fact, the only evidence provided is brief quote from Mark Nielander[3] during his deposition.

> Q:   So who was weeded out by this method of working on the box maker 2?
> A:   I think Vera, I think Frankie.  There was probably a lot more that I've even forgotten their names.
> Q:   Fair enough.  Were there any men that were weeded out?
> A:   Not that I know of.

Craig also identifies excerpts of Nielander's deposition wherein he testified that after the cross training program was implemented, women Operator IIs were required to operate the box maker 2 with greater frequency than male employees.  According to Craig, this caused the women to be weeded out from the position of Operator II.

Craig contends that this is direct evidence that only women were "weeded out" by the cross-training program.  However, this evidence fails for a number of reasons.  For instance, this evidence does not answer any questions concerning whether any women were retained as Operator IIs, how many women constituted Operator IIs, how many men were re-hired at this position, or how many women were actually "weeded out" during the cross-training process.  Under the *Albemarle* framework, Craig's evidence of statistical impact is insufficient to establish a *prima facie* case of disparate impact.  Therefore, Craig has failed to state a disparate impact claim via direct evidence.

Craig further contends that if the Court concludes that she has not established a direct evidence case, that she can establish a *prima facie* case of gender discrimination through indirect evidence under *McDonnell Douglas*.

---

[3]  Nielander was an Operator II for Continental in October, 2003.

11

A plaintiff establishes a *prima facie* case of gender discrimination based on indirect evidence by showing that: (1) plaintiff is a member of a protected class; (2) there was an adverse employment decision against her; (3) she was otherwise qualified for the position; and (4) the person chosen to replace her is not of the protected class. *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003). In a reduction in force case such as this one, the fourth element is modified and the plaintiff must submit "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Rowan v. Lockheed Martin Energy Systems, Inc.,* 360 F .3d 544, 548 (6th Cir. 2004). Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason which motivated the employment decision. Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *DiCarlo*, 358 F.3d at 414-15.

In this case, it is undisputed that Craig satisfies the first two elements of her *prima facie* case. As a woman she is a member of a protected class. Craig was also terminated from her position as an Operator II. However, because Craig has failed to satisfy the other two elements of her *prima facie* case, Continental is entitled to summary judgment on Craig's gender discrimination claim.

In order to qualified for her position, Craig must demonstrate that she was meeting Continental's legitimate expectations and was performing to its satisfaction. *Warfield v. Labanon Correctional Institute*, 181 F.3d 723, 729 (6th Cir. 1999). Continental has expressly stated that to be qualified as an Operator II after October of 2003, the employee

must be cross trained on all three machines, including the box-maker 2. It is undisputed that Craig has acknowledged that she cannot operate the box maker 2. Thus, she was not qualified for the job. Given the allegations in the complaint, however, Craig's inability to operate the box maker 2 does not end the Court's analysis. Craig argues that despite her admitted inability to operate the box maker 2, she was qualified for the position prior to the cross-training and that the change in her job description was motivated by Continental's attempt to eliminate women from its workforce. Craig's argument is misplaced.

It is undisputed that Continental suffered economically throughout the tenure of Craig's employment. During this time, Continental was forced to consolidate and restructure its workforce to create a more efficient and profitable operation. In a recent Sixth Circuit decision, the court considered a similar change in a plaintiff's job description that led to her termination. *See Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999). The court, in affirming the grant of summary judgment, wrote:

> Plaintiff emphasizes that she performed well … for many years and continued to have good sales performance. Also, a former [customer] attested that plaintiff often worked with [defendant's] top executives, had a thorough understanding of its objectives and strategies, and was competent, professional, and hard working. Nonetheless, defendant expressly identified mandatory changes in how it wanted plaintiff to do the job, which were related to consolidations in the … industry. We will not second guess defendant's business judgment that different sales methods needed to be employed to address those changes.

*Id.*

Plaintiff asserts that Continental's cross training requirement was pretextual. To demonstrate pretext, a plaintiff may show that the defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was

13

insufficient to warrant the challenged conduct." *Carter*, 349 F.3d at 274.  While Craig argues that Continental's discriminatory motivations are evidenced by the disparate impact of the process, she does not present any evidence that satisfies a pretextual motive.  As with the direct evidence argument, Craig's attempts at presenting a disparate impact do not satisfy the requirements of specificity needed to withstand summary judgment.

For all of these reasons, Continental is entitled to summary judgment on Craig's gender discrimination claims.

### D.   Craig's ADEA Claim

To prevail in an action under the ADEA, a plaintiff must show her age had a "determinative influence on the outcome" of the employment decision.   *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 141 (2000), *quoting, Hazen* Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  In a case alleging employment discrimination in violation of the ADEA, a plaintiff can withstand a motion for summary judgment by presenting either direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive.  *Rallins v. Ohio State University,* 191 F.Supp.2d 920, 928 (S.D.Ohio  2002), *citing Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348-49 (6th Cir. 1997).

As with Craig's gender discrimination claim, Craig's direct evidence claim of age discrimination fails for the same reasons.  As stated *supra*, Townsend's statements do not constitute direct evidence of discrimination because he was not involved in the decision-making process regarding the plaintiff's employment or the decision to require cross training of the Operator II positions.  *Carter*, 349 F.3d at 273.  Additionally, because the comments occurred approximately 8-9 months before Craig was laid off and ultimately

14

terminated in October, 2003, those comments are not probative of any disparate treatment based on Craig's age. *Jacklyn*, 176 F.3d at 928. Additionally and more importantly regarding Craig's ADEA claim based on direct evidence, Townsend's statements referred only to the fact that women should not be doing the specified work and that the employees on restrictions would not be coming back. Because neither of those comments have anything to do with age, they are not direct evidence of age discrimination.

The elements of an indirect claim of age discrimination under the Age Discrimination in Employment Act ("ADEA") are similar to the requirements for gender discrimination. *Barnett*, 153 F.3d at 341. To establish a *prima facie* case of age discrimination under the ADEA, Craig must not only demonstrate that he she was a member of the protected class, was subjected to an adverse employment action, and was qualified for the particular position, but must also "present additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled her out ... for discharge for impermissible reasons." *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 371 (6th Cir. 1999). Under the burden-shifting framework of *McDonnell Douglas*, if Craig makes out a prima facie case, the burden shifts to Continental to produce evidence of a non-discriminatory reason for its action. *Godfredson,* 173 F.3d at 371. The burden then returns to Craig to demonstrate that Continental's proffered reason is pretextual. *Id.* Although Craig satisfies the first two elements of a *prima facie* case, she fails to satisfy the remaining elements.

Craig's unwillingness/inability to cross-train on and operate the box-maker 2 rendered her incapable of performing the Operator II position. As a result, Craig's unwillingness to operate the box-maker 2 defeats her *prima facie* age case. It is undisputed that Continental's reduced roster of Operator II employees required a more

15

flexible and adaptable work force in order to maximize its production lines.  Moreover, Craig cannot deny the fact that the Continental workforce was continually shrinking throughout her tenure at Continental.  Additionally, there is no evidence that any employee, man or woman, older or younger, was permitted to continue working as an Operator II who was not cross-trained and able to operate all three pieces of equipment.

Craig also has failed to proffer any evidence to support her conjecture that she and other older women were singled out for discriminatory treatment.  Rather, Craig simply contends that the fact that operation of the box-maker 2 was strenuous and difficult for older women to operate shows Continental's discriminatory animus in requiring older women to perform the Operator II job.  When asked why she thought she was singled out, Craig stated:

> I just feel that they wanted to get rid of me based on my age because I wasn't as physically fit as the younger ones to do what they thought I should be doing.

When pressed to explain, Craig was unable to provide any details, stating:

> Q.     Why do you say it was your age that made them choose you [to lay off]?

A.   I just feel that way. What else would it be? If you had an employee that every time you asked them to do something they went and did it, they did exactly what you asked and went beyond that, except that they are a little older, would you get rid of them?

Q.   Other than that conclusion that you have made, what other facts do you have to support your - -

A.   I just feel that is what they were doing to me, and I feel that strongly, very strongly.

(Craig deposition at 84)

Even if Craig could establish a prima facie case of age discrimination under the ADEA, her failure to present evidence to show pretext is fatal to her claim. As stated by the Sixth Circuit, "[w]here an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company." *Almond v. ABB Indus. Sys., Inc.*, 56 Fed. Appx. 672, 678 (6th Cir. 2003)

In this case, Craig has simply failed to raise a genuine issue regarding whether the reduction in force and the decision to require cross training of all Operator II positions was a pretext for age discrimination.   For  all  of  these reasons, Continental is entitled to summary judgment on Craig's ADEA claim.

**E.    Craig's state law disability claim**

The final claim made by Craig in her complaint is that Continental discriminated against her because of her disability.  However, because Craig failed to respond to Continental's motion for summary judgment on her state law disability claim, the Court presumes that Plaintiff abandoned that claim.  Because Craig has abandoned this claim, summary judgment will be granted in favor of Continental on Craig's state law disability claim. *Wilson v. Dana Corp.*, 210 F.Supp.2d 867, 886 (W.D.. Ky. 2002).  However, even

17

if the Court were to address the merits of this claim, Continental would still be entitled to summary judgment as Craig has failed to submit any evidence of a physical impairment that substantially limits one or more of her major life activities of the individual, a record of such an impairment, or that Continental regarded her as having such an impairment.

Under K.R.S. § 344.040(1), it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, … because the person is a qualified individual with a disability." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). The Kentucky statute mirrors the language of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. Both of the aforementioned statutes forbid discrimination based on disability. *Id.*

In *Toyota Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2001), the Supreme Court recently discussed what major life activities constituted a person being classified as disabled for the purposes of the statute. In *Williams*, Ms. Williams had been diagnosed by doctors with carpal tunnel syndrome and bilateral tendinitis, which restricted her from working too many hours a week and lifting over a certain weight. *Id.* at 188. Although Toyota accommodated her for some time, it eventually moved her to a quality control department that included four different jobs. *Id.* At first, she was only rotated through two of the four jobs. *Id.* However, after some time, Toyota demanded that she rotate between all four jobs. *Id.* at 189. The rotation caused Ms. Williams to miss a considerable amount of work. *Id.* Toyota then terminated her employment. *Id.*

18

The Court noted that evidence of a medical diagnosis does not satisfy the definition of substantial impairment of major life activity, although it can certainly be evidence of such a problem. *Id.* at 198. The focus under the ADA is the impact of the impairment on a plaintiff's day-to-day life. *Id.* In discussing this issue, the Court concluded:

> When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, *not whether the claimant is unable to perform the tasks associated with her specific job* … Even more critically, the manual tasks unique to any particular job are not necessarily important parts of most people's lives. *As a result, occupation-specific tasks may have only limited relevance to the manual task inquiry*. In this case, "repetitive work with hands and arms extended at or above shoulder levels for extended periods of time," the manual task on which the Court of Appeals relied, is not an important part of most people's daily lives.

*Id.* at 200-01 (internal citations omitted) (emphasis added). The Court instructed, "the relevant inquiry is the fact that Williams can 'tend to her personal hygiene [and] carry out personal chores." *Id.* at 201-02. Although acknowledging that Ms. Williams was unable to sweep, dance and occasionally sought help getting dressed, the Court found that she was not disabled under the definition of the ADA. *Id.* at 202.

In this case, it is clear that Craig does not qualify as "disabled" under K.R.S. § 344.040. Similar to Ms. Williams, Craig has a medical diagnosis that limits her ability to work long hours and lift heavy objects. However, as Craig admits, she is able to dress herself, clean her house, do the dishes and to drive. Craig deposition at 90. Although she testified she had trouble carrying groceries and running up and down the stairs, *id.* at 92, she acknowledged that she was able to do every job in the factory at Continental except the box-maker 2. *Id.* at 95.

19

Under the guidance of *Williams*, it is clear that Craig is not disabled as a matter of law.  The medical problems identified in the record do not substantially impair any major life activity.  As a result, Continental is entitled to summary judgment on this issue.

Therefore, for the reasons stated herein,

**IT IS ORDERED as follows:**

1.     Continental's Motion for Summary Judgment (Doc. # 31) be, and is hereby **GRANTED**;

2.     Plaintiff's complaint be, is and hereby **dismissed with prejudice** and **stricken** from the docket of this Court

3.     A Judgment in favor of Defendant will be entered concurrently herewith.

This 26th day of September, 2006.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\2-04-248 MOO granting MSJ.wpd